IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CHRISTOPHER BUNTEN,

Petitioner,

v.

LIZZIE TEGELS,

Respondent.

OPINION and ORDER

20-cv-268-wmc

*Pro se* petitioner Christopher Dean Bunten seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging his January 2014 conviction and incarceration for second-degree sexual assault of an intoxicated person.  In particular, Bunten argues his trial counsel's failure to retain a toxicology expert, adequately cross-examine the state's toxicology expert, and call additional witnesses violated his Sixth Amendment right to effective assistance of counsel.  Additionally, Bunten argues that the judge showed judicial bias during postconviction proceedings.  Finally, he asserts that there was insufficient evidence presented at trial to sustain his conviction.  For all the reasons explained below, Bunten's petition must be denied, including, most fundamentally, that Bunten has failed to establish the Wisconsin Court of Appeals unreasonably applied clearly established federal law or based its affirmance of his conviction on an unreasonable interpretation of the facts in rejecting his claims of ineffective assistance of counsel and judicial bias. Further, his challenge to the sufficiency of the evidence is procedurally barred by his failure to exhaust the claim in one, complete round of state court reviews.

BACKGROUND[1]

## A. Criminal conviction for second-degree sexual assault of an intoxicated person

In Douglas County Circuit Court Case No. 2012CF309, Bunten was charged with second-degree sexual assault of an intoxicated person, second-degree sexual assault with use of force, and burglary.  On the date of the incident, Bunten arrived at the apartment of the victim, "C.J."  She and two friends, Monica and Richard, had apparently already been drinking beer and smoking marijuana when Bunten offered them methamphetamine, which all four proceeded to smoke.

At trial, C.J. testified she told her guests at some point that she "was going to pass out," and she instructed one of her friends to make sure everyone was gone and the door was locked.  C.J. testified that she did not remember her guests leaving, and the next thing she remembered was waking up to find Bunten having sex with her.  After struggling to stop him, she also described eventually succeeding in getting him to leave, but only after biting him.  After Bunten left, C.J. called her niece Laura, her sister, and her friend Monica, who had been in her apartment earlier, to tell them she had been raped.  Monica then returned and called the police.

Bunten testified differently than C.J. at trial. According to Bunten, C.J. invited him to come back to her apartment and have sex after the other guests left.  Bunten further testified that:  he then returned to her apartment; C.J. let him in; and they smoked more methamphetamine, kissed in her kitchen, eventually went to the bedroom and had sex.

---

[1] The following facts are taken from Bunten's petition and the state court records provided by Bunten and the state.

When asked to describe C.J.'s condition, Bunten said, "it was 50-50. She was high and she was drunk."

The detective who arrived on the scene testified that C.J. was "very drunk," and he took her to the hospital, where she was examined by a Sexual Assault Nurse Examiner (SANE). The SANE nurse testified that the samples she obtained during her examination of C.J. matched a DNA swab obtained from Bunten. The state's toxicologist, Amanda Hanson, testified that the urine sample obtained from C.J. by the SANE nurse tested positive for alcohol, amphetamines, methamphetamines, benzodiazepines, and cannabinoids. Hanson also testified that the concentration of alcohol in C.J.'s urine was four times the legal limit to drive in Wisconsin. Ultimately, Bunten's attorney chose not to cross-examine Hanson on either her estimate of C.J.'s level of intoxication, nor to produce any defense witnesses, besides defendant Bunten himself.

The jury acquitted Bunten of both second-degree sexual assault with use of force and burglary, but it found him guilty of second-degree sexual assault of an intoxicated person, for which he was sentenced to five years of imprisonment, to be followed by fifteen years of extended supervision.

## B. Postconviction proceedings in circuit court

Bunten next sought postconviction relief in the trial court, arguing that his attorney was ineffective for failing to cross-examine the state's toxicologist adequately, to retain a toxicology expert for the defense, and to investigate and call Laura and one of her friends as witnesses. Bunten also argued that he was entitled to a new trial based on newly

discovered evidence that Charles Norton, a former boyfriend of Monica, had overheard her express displeasure that she was "going to put an innocent man in jail."

The circuit court held an evidentiary hearing on Bunten's postconviction motion, at which he presented evidence that two witnesses would have testified that sometime after C.J. reported the assault, she called her niece, Laura, to apologize, and acknowledge lying about Bunten assaulting her. After the state court judge questioned one of Bunten's witnesses, he also filed a motion for recusal against the judge, arguing that the his questioning showed judicial bias. However, the circuit court denied that motion, then denied Bunten's underlying postconviction motion. In particular, the judge found that Bunten's trial counsel did not perform deficiently in his cross-examination of Hanson, and that his failure to call a toxicology expert was neither deficient nor prejudicial. Additionally, the circuit court held that counsel did not perform deficiently or prejudice Bunten's defense by failing to call C.J.'s niece Laura and her friend Pearson. Lastly, the court held that Norton's testimony would have had "no impact" on Bunten's conviction for second-degree sexual assault.

## C. The Wisconsin Court of Appeals' decision

In his subsequent appeal to the Wisconsin Court of Appeals, Bunten again challenged his counsel's failure (1) to cross-examine the state's toxicologist adequately and retain an independent expert toxicologist; and (2) to investigate and call Laura and her friend as witnesses. Bunten also renewed his claim of judicial bias.

In affirming Bunten's conviction, the Wisconsin Court of Appeals first found that the failure to cross-examine Hanson on the issue of C.J.'s level of intoxication was not prejudicial because there was sufficient evidence that she was so intoxicated as to be unable to give consent to sexual activity, and that Bunten had actual knowledge she was incapable of giving consent.  The court further found Bunten was not prejudiced by counsel's failure to retain and call an independent toxicology because the circuit court indicated during the postconviction hearing that it would not have permitted a defense expert in toxicology to opine whether C.J. could have "appeared" to be engaging in the sexual activity voluntarily and with consent.  Thus, the court of appeals held that excluding such expert testimony would not have been an abuse of discretion.

As for counsel's failure to call additional defense witnesses, the court of appeals concluded that counsel was not deficient, noting that Bunten's counsel had in fact investigated these witnesses, and planned to call one of them, but then made a reasonable strategic trial decision not to do so based both on testimony offered by the state and the strength of the witness.

Finally, with respect to judicial bias, the court of appeals concluded that the trial court judge had not exhibited any sign of objective bias in questioning Bunten's expert at the postconviction hearing.   Indeed, contrary to Bunten's assertions, the court of appeals found the judge asked relevant questions without crossing the line into advocacy, and his manner of questioning was not inappropriately confrontational or argumentative.

**D. Petition for review to the Wisconsin Supreme Court**

Following the Wisconsin Court of Appeals' affirmance, Bunten's counsel filed a no-merit petition to the Wisconsin Supreme Court, which consisted of a recitation of the background facts and procedural history of the case.  Bunten responded to the petition with a letter, arguing that he had been denied his right to counsel of his choice when the circuit court denied his request, mid-trial, to substitute new counsel.  However, he did not specifically address the other claims adjudicated by the court of appeals or discuss the no-merit brief.

The Wisconsin Supreme Court denied review of Bunten's claims, and Bunten filed a petition for a writ of habeas corpus with this court.


OPINION

As noted above, petitioner contends that he is entitled to habeas relief for four reasons: (1) counsel was ineffective for failing to cross-examine the state's toxicologist adequately or retain a defense toxicologist; (2) counsel was ineffective for failing to call particular witnesses; (3) the postconviction court showed judicial bias; and (4) there was insufficient evidence at trial to convict him.  The state argues that all of petitioner's claims were procedurally defaulted or, alternatively, fail on the merits.  The court addresses each argument below.

## I.  Procedural Default

State prisoners must "exhaust[] the remedies available in the courts of the State" before seeking federal habeas relief.  *Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022) (quoting 28 U.S.C. § 2254(b)(1)(A)).  To exhaust state remedies, a prisoner must present the issue for one complete round of state court review.  Failure to exhaust state remedies for a particular issue results in that issue being procedurally barred from federal court review.

This court previously found that Bunten's fourth claim, regarding the sufficiency of the evidence, was procedurally barred because he failed to raise it in the state courts. (Dkt. # 13, at 4).  Still, Bunten urges the court to consider it, arguing that a failure to do so would result in a miscarriage of justice.  Certainly, a procedurally defaulted claim may be considered on federal habeas review *if* the petitioner can show that a "failure to consider" it "will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  However, this exception only applies "in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted." *Blackmon v. Williams*, 823 F.3d 1088, 1099 (7th Cir. 2016) (quoting *McDowell v. Lemke*, 737 F.3d 746, 483 (7th Cir. 2013)).

Here, Bunten primarily argues that the evidence at trial was insufficient to prove that C.J. was incapable of giving consent.  However, that is not an argument of actual innocence; rather, Bunten is merely challenging the sufficiency of the evidence regarding consent.  Moreover, as respondent points out, the state presented more than sufficient evidence that C.J. was intoxicated, including (in addition to the toxicology report)

testimony from C.J. herself that she had drank "around 30 beers" throughout the day leading up to the assault.  Indeed, when asked about C.J.'s condition, even Bunten testified that "it was 50-50.  She was high and she was drunk."  Regardless, because Bunten does not meet any exception to the procedural bar, the court will not address the merits of this claim further.[2]

Whether the other three claims were procedurally defaulted is a closer question. The state argues that these claims were procedurally defaulted because Bunten did not fairly present any of those claims in his response to his counsel's no-merit petition to the Wisconsin Supreme Court.   To "fairly present" a claim in state court, a petitioner is required to present "both the operative facts and controlling law" relevant to his claim, in addition to an analysis of the "constitutional nature of the claim."  *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006).  Bunten's appellate counsel's no-merit petition did not satisfy this requirement, as it consisted primarily of a recitation of the background facts and procedural history of the case, and did not identify nor discuss any potential appealable issues.  Bunten's response to the no-merit petition likewise did not specifically raise or discuss the three ineffective assistance claims that he is now raising in this petition, arguing only that the trial court improperly denied his request to substitute counsel mid-trial.

That being said, Bunten was proceeding *pro se* when he filed his response to the no-merit petition, and a *pro se* petitioner's filings are to be read generously.  *Lewis v. Sternes*,

_____

[2] While *Coleman* also recognized an exception for procedural default upon a showing of "cause for the default and actual prejudice," 501 U.S. at 750, Bunten neither argues for, nor attempts to, prove this exception.

390 F.3d 1019, 1026 (7th Cir. 2004). This would seem particularly important since Bunten's appellate counsel's no-merit petition failed to actually identify or discuss any potential appealable claims, and Bunten may not have fully understood his obligation to independently raise the issues that had been decided already by the Wisconsin Court of Appeals. State v. Allen, 2010 WI 89, ¶ 40, 328 Wis. 2d 1, 786 N.W.2d 124. Thus, rather than scrutinize whether Bunten "fairly presented" these three claims in state court, this court will address them on their merits. *See* 28 U.S.C. § 2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

## II.  Merits

Under 28 U.S.C. § 2254, a federal court may only grant habeas relief following adjudication on the merits in state court if that decision was:  (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2); *Czech v. Melvin*, 904 F.3d 570, 573 (7th Cir. 2018). A decision is contrary to clearly established federal law "if the rule the decision applies differs from governing law set forth in Supreme Court cases." *Bailey v. Lemke*, 735 F.3d 945, 949-50 (7th Cir. 2013). An unreasonable application of clearly established federal law occurs if a state court identifies the correct legal rule but applies it in an objectively unreasonable manner. *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Because the Wisconsin Court of

Appeals addressed the merits of Bunten's ineffective assistance of counsel and judicial bias claims, the scope of the court's review is particularly deferential under 28 U.S.C. § 2254(d)(1).

### A.   Ineffective assistance of counsel claims

Bunten advances two ineffective assistance of counsel claims.  Under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must demonstrate that counsel's performance was deficient.  *Id*. at 687; *Smith v. Brown*, 764 F.3d 790, 795 (7th Cir. 2014). To do this, the petitioner must point to specific acts or omissions by counsel demonstrating that counsel's performance fell outside the "range of competence demanded" -- that is, below an objective standard of reasonableness.    *Strickland*, 466 U.S. at 687-90. Additionally, the petitioner must show that counsel's deficient performance prejudiced their defense.  *Id*. at 687.  To do this, the defendant must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  If the error by counsel had no material effect on the final judgment, then relief is not warranted.  *Hicks v. Hepp*, 871 F.3d 513, 526 (7th Cir. 2017).  If either of the Strickland prongs are not met -- counsel falling below an objective reasonableness standard or prejudice -- the court need not analyze the other.  *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993) ("A defendant's failure to satisfy either prong is fatal to his claim.").

1.  **Failure to cross-examine the state's toxicology expert adequately or retain an independent toxicology expert**

Bunten specifically argues that his counsel should have called attention to the state's toxicology expert Amanda Hanson's inaccurate opinion regarding C.J.'s level of intoxication, having opined that C.J.'s level of intoxication was four times the legal limit, instead of three times, or at least called a toxicology expert to opine that C.J. could have appeared to Bunten to be engaging in the sex act consensually.  Whether or not trial counsel's decisions as to either of these matters could be deemed objectively deficient, the court of appeals concluded that Bunten had not shown his counsel's failure to cross-examine Hanson prejudiced his defense, having found "ample evidence" outside of Hanson's testimony to show C.J. was intoxicated.  While Bunten again argues that this conclusion was unreasonable, he does not elaborate why.

The Wisconsin Court of Appeal's decision was reasonable and supported by the record.  There was "ample evidence" by which a jury could have found C.J. overly intoxicated, including C.J.'s testimony herself, Bunten's own testimony that he was aware of C.J.'s intoxication -- "it was 50-50.  She was high and she was drunk", the responding officer's testimony, C.J.'s sister's testimony and the toxicology report.  Therefore, this court has no basis to overturn the state court's determination that counsel's failure to notice this error and cross-examine the state's expert about it was not prejudicial.  Nor is there a sufficient basis to second-guess the court's finding that the jury would not have found a reasonable doubt as to whether C.J. was too intoxicated to give consent had defense counsel decided to cross-examine the expert on this subject.  To the contrary, the evidence was

overwhelming that C.J. was profoundly intoxicated and had passed out before Bunten returned to the apartment, and while Bunten testified otherwise, the jury obviously found C.J.'s testimony that she awoke to being raped more credible.

Additionally, the court of appeals reasonably concluded that Bunten had failed to show that counsel's decision not to retain a toxicology expert prejudiced his defense, even assuming such an expert were willing to opine that C.J. could have appeared to be consenting to the sex act at three times the legal limit for driving and having other drugs in her system.  The court of appeals relied on state court precedent holding that expert opinion on an ultimate fact (here, consent) is only permissible if the opinion is given using a hypothetical case or situation, and even then would have been wholly speculative.  So counsel was not deficient for failing to call such an expert, because he or she would not have been allowed to give the desired opinion.  Given that the state was allowed to call an expert to opine on an arguably similar question -- C.J.'s level of intoxication and likely level of impairment -- this is not a totally satisfying conclusion, but the court cannot disagree with the Wisconsin Court of Appeals conclusion that this fell within the trial court's discretion.  At most, a defense expert would only have been able to disagree with the extent of intoxication, not the fact that C.J. was very drunk.

## 2.  Failure to call certain witnesses

Bunten also asserts that trial counsel should have called Laura and Pearson as witnesses to testify that C.J. recanted.  The court of appeals found that counsel was not deficient because they made a reasonable strategic trial decision based on the weakness of one witness and rebutting testimony from the state.

There is a strong presumption that strategic decisions made by trial counsel are sound. *Strickland*, 466 U.S. at 690. If, after conducting an investigation into a witness, counsel makes a legitimate strategic decision not to call that witness because the witness "might on balance harm rather than help the defendant," that decision is entitled to deference. *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997). Here, trial counsel testified at the postconviction hearing that he believed Pearson was a "really weak witness." Additionally, he had planned to call Laura as a witness to testify that she heard C.J. recant on the phone. At trial, however, the state presented evidence that C.J. only falsely recanted on the phone at the direction of a police officer, apparently in an attempt to get Laura to stop calling her. As a result, trial counsel believed that the state had "effectively negated the impact" of Laura's potential testimony.

While Bunten nevertheless argues that the decision not to call these witnesses was deficient, he has not overcome the presumption that these strategic decisions by counsel were reasonable.

**B. Judicial Bias Claim**

"A fair hearing before a fair and unbiased adjudicator is a basic requirement of due process under the Fourteenth Amendment." *Alston v. Smith*, 840 F.3d 363, 368 (7th Cir. 2016) (citing *Withrow v. Larkin*, 421 U.S. 35, 46 (1975). Bunten asserts that the circuit court displayed judicial bias when it questioned his expert toxicologist, Anne Manly, at the postconviction hearing. In particular, he characterizes the court's questioning of the witnesses as confrontational and adversarial, citing the Seventh Circuit's decision in *United*

13

*States v. Webb*, 83 F.3d 913, 917 (7th Cir.1996), for the proposition that a judge must be impartial when questioning witnesses.

However, the Wisconsin Court of Appeals began with the presumption that a judge has acted without bias, and after examining the record, found that Bunten failed to overcome the presumption that the circuit court was unbiased because the court's questioning of the witness was appropriate.  (Dkt. #17-6, at 15.)  This court agrees. Indeed, the circuit court's questioning exhibited no bias in its questioning of Manly.  While interrupting the witness occasionally, the court also explained that Manly's testimony by speakerphone accounted for at least some of the interruptions.  Furthermore, the court did not usurp the role of the district attorney in questioning Manly about relevant issues in her testimony.  Rather, the court was using its inherent authority to clarify the issues in order to make a well-informed ruling.  *See* Wis. Stat. § 906.14(2).  Because the court of appeals conclusion was reasonable, this claim fails on the merits as well.

### III.  Certificate of Appealability

Finally, under Rule 11 of the Rules Governing Section 2254 Cases, the court must either issue or deny a certificate of appealability when entering a final order adverse to a petitioner.  To obtain the certificate, the applicant must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (284).  This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that issues presented were adequate to deserve encouragement to proceed further."  *Miller El v.*

14

*Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).  Here, Bunten has failed to make such a showing.  Therefore, the court will not issue petitioner a certificate of appealability.

ORDER

IT IS ORDERED that:

1.  Petitioner Christopher Dean Bunten's petition for a writ of habeas corpus under 28 U.S.C. § 2254 is DENIED.

2.  Petitioner is DENIED a certificate of appealability.

Entered this 2nd day of November, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge